Tagged For Publication



ORDERED in the Southern District of Florida on November 1, 2012.

John K. Olson, Judge
United States Bankruptcy Court

_____

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
### Fort Lauderdale Division
www.flsb.uscourts.gov

**In re**:

**FLORIDA MANUFACTURING
& DISTRIBUTION**,

        Debtor.
_____/

SONYA **SALKIN**, Trustee

        Plaintiff,

v.

**NOVADEBT**
Aka Garden State Consumer Credit Counseling, Inc.

        Defendant.
_____/

Case No. 09-32194-BKC-JKO

Chapter 7

Adversary Proceeding No.

11-02586-BKC-JKO

## Order (I) Granting-in-Part and Denying-in-Part Adversary Defendant's Motion for Summary Judgment [ECF No. 20] and (II) Granting-in-Part and Denying-in-Part Plaintiff's Cross Motion for Summary Judgment [ECF No. 33]

On September 28, 2011, Plaintiff Sonya L. Salkin, ("Trustee"), filed an adversary complaint seeking to avoid and recover $70,217.76 in fraudulent transfers under 11 U.S.C. §544(b), §550, and Fla. Stat. §§ 726.105(1)(a)-(b), 726.106(1), paid by Florida Manufacturing and Distribution ("Debtor") to the Defendant Novadebt, aka Garden State Consumer Credit Counseling, Inc. ("Novadebt").[1] Novadebt filed a Motion for Summary Judgment on March 30, 2012 to dismiss Trustee's complaint and the adversary proceeding in its entirety.[2] On May 9, 2012, Trustee filed a Cross Motion for Summary Judgment seeking summary judgment on its claims alleged in the complaint.[3] These cross motions for summary judgment came before the court for hearing on July 17, 2012. The parties addressed whether "mere conduit" status applies to Novadebt, which is a defense that carves out protection from initial transferee liability under fraudulent transfer actions. It was a materially undisputed fact that Debtor sent checks to Novadebt throughout a four year period prior to Debtor filing for bankruptcy. Novadebt argued that it was not liable for any fraudulent transfer liability because of the "mere conduit" defense. The Trustee countered that the equitable defense does not apply and that the checks constitute fraudulent transfers. For the reasons below, the court finds that Novadebt has established as a matter of law that it acted as a "mere conduit" in its handling of the money transfers at issue and is entitled to dismissal. Novadebt's Motion for Summary Judgment is

---

[1] *See* Pl.'s Complaint to Recover Transfers., ECF No. 1.
[2] *See* Def.'s Mot. for Summ. J., ECF No. 20.
[3] *See* Pl.'s Cross Mot. for Summ. J., ECF No. 33.

therefore granted-in-part and Trustee's Cross Motion for Summary Judgment is accordingly denied-in-part.

*Material Undisputed Facts*

The Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code on October 14, 2009.[4] Husband and wife Stanley Ferber and Laura Ferber (the "Ferbers") are principals of the Debtor. They are both listed as directors in the Debtor's 2006-2009 corporation annual reports filed with the Florida secretary of state.[5] In addition, Stanley Ferber signed the Debtor's Chapter 7 Voluntary Petition as its President.[6] Novadebt's motion to dismiss included an affidavit by Susan Niemiec, Novadebt's compliance manager ("Niemiec Affidavit").[7] Both parties cite to the Niemiec Affidavit in their cross motions for summary judgment to establish the following undisputed facts. Novadebt is a non-profit consumer credit counseling agency. In June 2004, the Ferbers approached Novadebt for credit card counseling.[8] Novadebt made a determination that a plan could be created to pay off the Ferbers' unsecured debt. On or about June 23, 2004, the Ferbers entered into a written and signed agreement with Novadebt for Credit Counseling and Debt Adjustment Services (the debt management plan, or "DMP").[9] Novadebt got in contact with ten of the Ferbers' creditors ("DMP Creditors") and entered into an agreement with them.[10] The terms of the DMP stated that Novadebt was authorized to

---

[4] *See* main case 09-32194-JKO, ECF No. 1.
[5] ECF No. 33-1, at pg. 6-9.
[6] *See* main case 09-32194-JKO, ECF No. 1.
[7] *See* Def.'s Mot. for Summ. J., ECF No. 20, at pg. 10.
[8] *See* Niemiec Affidavit, ECF No. 20, at ¶ 8.
[9] *See Id.* at 9; ECF No. 20, at pg. 15 (signed copy of Agreement for Credit Counseling and Debt Adjustment Services).
[10] *See* Niemiec Affidavit, ECF No. 20, at ¶ 11.

deposit all of the money it received towards the Ferbers DMP into a client trust account.[11] The Niemiec Affidavit states that Novadebt did not review the source of funds contributed to any DMP, and that it was not uncommon for payments to be made by third parties.[12] Within ten days of receiving a payment, Novadebt was contractually required to disburse the payment amounts held in the client trust account to the DMP Creditors.[13] Novadebt was also entitled to a monthly maintenance fee of $50.00 withdrawn from the client trust account.[14]

The monthly DMP payments that formed the basis of Trustee's fraudulent transfer claims were checks drawn from the Debtor's checking account (not the Ferbers' personal account) and sent to Novadebt within a four year period preceding the Debtors filing for bankruptcy. The Trustee's Complaint and Cross Motion for Summary Judgment asserts that the checks of this particular nature totaled $70,217.26 dollars.[15] Novadebt's internal client activity report shows that payments to Novadebt on behalf of the Ferbers started on July 21, 2004 and ending on April 24, 2009. All of the payments were made by check, with the exception of one money order payment on November 19, 2009. According to the Novadebt activity report and the Niemiec Affidavit, all of the payments to Novadebt totaled $106,470.00, of which $105,734.00 was paid to the Ferbers' DMP creditors.[16] The total amount that Novadebt kept as maintenance fee payments was $736.00. The

---

[11] ECF No. 20, at pg. 15 ("Client authorizes agency to deposit all payments into an account designated for payments made toward the Debt Management Plan (Client Trustee Account)").
[12] See Niemiec Affidavit, ECF No. 20, at ¶ 10.
[13] ECF No. 20, at pg. 15 ("Agency agrees to disburse funds to the clients creditors within 10 days of receipt of the clients monthly payment").
[14] See Niemiec Affidavit, ECF No. 20, at ¶ 12.
[15] See Pl.'s Complaint to Recover Transfers., ECF No. 1; See Pl.'s Cross Mot. for Summ. J., ECF No. 33.
[16] See Niemiec Affidavit, ECF No. 20, at ¶ 16; ECF No. 20, at pg. 17-18 (Internal Novadebt client activity report).

DMP ended after July 2, 2009 when Stanley Ferber informed Novadebt that all of the debt owed to the DMP Creditors was settled.[17]

## *Conclusions of Law*

### A. Jurisdiction

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. The matters at issue constitute a "core proceeding" pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. § 1409. Neither party disputes the jurisdiction or venue of the court in this matter.

### B. Legal Standard for Summary Judgment

The standard for granting summary judgment is dictated by Rule 56 of the Federal Rules of Civil Procedure and is made applicable to this bankruptcy proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure. The use of summary judgment within the judicial system is encouraged. Summary judgment is regarded "not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole."[18] The rule regarding the scope and purpose of summary judgment states that it shall "be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding."[19] Summary judgment is proper if all of the materials on file together with any affidavits show that there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law.[20] It is initially the burden of the moving party to show the court that there are no genuine

---

[17] *See* Niemiec Affidavit, ECF No. 20, at ¶ 16.
[18] *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).
[19] FED.R.CIV.P. 1.
[20] *See* FED.R.CIV.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

issues of material fact to be decided at trial.[21] The Eleventh Circuit has adopted a reasonableness standard. Under this standard, the court should view the evidence and factual inferences presented by the movant in a light that is most favorable to the party opposing the motion for summary judgment, and resolve all reasonable doubts in favor of that party.[22] The key requirement for a successful motion for summary judgment is that no genuine issue of material fact exists.[23] In order for a non-movant party to defeat a motion for summary judgment, that party must to go beyond its pleadings alone and provide specific facts showing genuine issues for trial.[24] Furthermore, these facts must convey more than just a scintilla of evidence supporting that proposition.[25] Mere allegations or denial of the pleadings is not sufficient to overcome a movant party's motion for summary judgment.

There is no dispute between the parties in this adversary proceeding as to the underlying fact that payments were made by Debtor to Novadebt, placed in a trust account, and then paid to the Ferbers' DMP Creditors in accordance with the signed DMP agreement. As evidenced by their motions for summary judgment, both Novadebt and Trustee believe that all material facts necessary to decide this case have been established, which entitles them to judgment as a matter of law on their legal theories. The court agrees with the parties that all of the material facts have been established and that it is appropriate to analyze these facts and establish conclusions of law.

---

[21] *See Jeffery v. Sarasota White Sox, Inc.,* 64 F.3d 590, 593-94 (11th Cir. 1995); *Clark v. Coats & Clark, Inc.,* 929 F.2d 604 (11th Cir.1991).
[22] *See Samples on Behalf of Samples v. City of Atlanta,* 846 F.2d 1328, 1330 (11th Cir. 1988).
[23] *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986).
[24] *see* FED.R.CIV.P. 56(e); *Celotex v. Catrett,* 477 U.S. 317, 324 (1986); *See also Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986); *Martin v. Commercial Union Ins. Co.*, 935 F.2d 235, 238 (11th Cir. 1991).
[25] *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986); *See also In re E.S. Bankest*, L.C.,2006 WL 3922112 at *2 (Bankr. S.D. Fla. 2006).

### C.    Initial Transferee and the "Mere Conduit" Defense

The Trustee's claims rely on the characterization of Novadebt as an "initial transferee." This term is taken directly from 11 U.S.C. §550 of the Bankruptcy Code. §550 is the statutory mechanism by which the Trustee can recover fraudulent transfers that are avoided by statute (including under §544 of the Bankruptcy Code). "The trustee may recover, for the benefit of the estate, the property transferred…from, 1) the initial transferee of such transfer or the entity for whose the benefit was made, or 2) any immediate or mediate transferee of such initial transferee."[26] Novadebt argues that it does not have any fraudulent transfer liability to Trustee and Debtor's estate, because "the undisputed facts show that Defendant was not an initial transferee, but rather a mere conduit for the transfers, rendering the transfers unrecoverable by the Trustee."[27]

The term "initial transferee" has been described by the Eleventh Circuit as "a term of art whose meaning in any given transaction is not always straightforward."[28] But "[m]ost circuit courts to have considered the issue, including the Eleventh Circuit, have adopted a 'control' or 'conduit' test to determine whether the recipient of an avoidable transfer of assets is the initial transferee."[29] It is necessary to examine case precedent from the Eleventh Circuit to better understand the meaning of "initial transferee". The Court of Appeals did such an examination in the case *In re Harwell*, 628 F.3d 1312 (11th Cir. 2010). The *Harwell* Court identified how the statutory term "initial transferee" has

---

[26] 11 U.S.C. §550(a).
[27] *See* Def.'s Mot. for Summ. J., ECF No. 20, at pg 5.
[28] *In re Pony Express Delivery Services, Inc.,* 440 F.3d at 1300 (11th Cir. 2006); *In re Int'l Admin. Servs., Inc.,* 408 F.3d 689, 705 (11th Cir. 2005).
[29] *Id.*; *see also In re Columbia Data Prods., Inc.,* 892 F.2d 26, 28 (4th Cir. 1989); *In re Bullion Reserve of N. Am.,* 922 F.2d 544, 548-49 (9th Cir. 1991); *In re Baker & Getty Fin. Servs., Inc.,* 974 F.2d 712, 722 (6th Cir. 1992); *In re Coutee,* 984 F.2d 138, 140-41 (5th Cir. 1993); *Bonded Fin. Serv., Inc. v. European Am. Bank,* 838 F.2d 890, 893 (7th Cir. 1988); *In re First Sec. Mortg. Co.,* 33 F.3d 42, 44 (10th Cir. 1994); *In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey,* 130 F.3d 52, 58 (2d Cir. 1997).

been interpreted to rigidly mean "that the first recipient of the debtor's fraudulently-transferred funds is an "initial transferee."[30] Under this strict interpretation, Novadebt would be considered an initial transferee, because the transfers were made directly from the Debtor to Novadebt before they were paid to the DMP Creditors. However, the *Harwell* Court next discussed how case precedent has carved out a judicially created, equitable exception to the literal statutory language of "initial transferee".[31] This test is "known as the mere conduit or control test, for initial recipients who are 'mere conduits' with no control over the fraudulently-transferred funds."[32]

    The Eleventh Circuit first adopted the "mere conduit" or "control test" in the case of *In re Chase & Sanborn Corp.,* 813 F.2d 1177 (11th Cir.1987),[33] and it has consistently been applied in Eleventh Circuit cases since.[34] There are two factors that must be established in order for this equitable defense to apply. First, the recipient must not have exercised legal control over the transferred funds. A recipient of an avoidable transfer is "an initial transferee only if they exercise legal control over the assets received, such that they have the right to use the assets for their own purposes, and not if they merely served as a conduit for assets that were under the actual control of the debtor-transferor or the real initial transferee."[35] Second, the recipient must establish that it acted in good faith, and was an innocent participant in the fraudulent transfer. "As we read it, the conduit rule

---

[30] *In re Harwell*, 628 F.3d 1312, 1322 (11th Cir. 2010); *See also Nordberg,* 848 F.2d at 1199–1200; *accord IBT,* 408 F.3d at 705.
[31] *Id* at 1322.
[32] *Id* at 1322.
[33] *See In re Chase & Sanborn Corp.,* 848 F.2d 1196, 1199 (11th Cir. 1988) ("In *In re Chase & Sanborn Corp.,* 813 F.2d 1177 (11th Cir.1987), our court adopted the control test to determine whether a debtor had possession of property allegedly recoverable").
[34] *See e.g. In re Pony Exp. Delivery Services, Inc.,* 440 F.3d 1296 (11th Cir. 2006); *In re Int'l Admin. Services, Inc.,* 408 F.3d 689 (11th Cir. 2005); *In re Harwell,* 628 F.3d 1312, 1321 (11th Cir. 2010).
[35] *See In re Pony Exp. Delivery Services, Inc*., 440 F.3d 1296, 1300 (11th Cir. 2006); *see also Nordberg v. Societe Generale (In re Chase & Sanborn Corp.),* 848 F.2d 1196, 1199-1200 (11th Cir.1988); *Nordberg v. Arab Banking Corp. (In re Chase & Sanborn Corp.),* 904 F.2d 588, 599, 599 n. 26 (11th Cir.1990); *Bonded Fin. Serv.*, 838 F.2d at 893*; In re Ogden,* 314 F.3d 1190, 1202, 1204 (10th Cir.2002).

presumes that the facilitator of funds acts without bad faith, and is simply an innocent participant to the underlying fraud".[36]

In order for Novadebt to successfully establish that this equitable defense should apply, it must first prove that it "did not have control over the assets received" and second, that it "acted in good faith and as an innocent participant in the fraudulent transfer."[37] It is important to recognize that the "mere conduit" or "control test" is deeply rooted in equitable considerations. "It would be inequitable to hold an initial recipient of the debtor's fraudulently-transferred funds liable where that recipient could not ascertain the transferor debtor's solvency, lacked any control over the funds, or lacked knowledge of the source of the funds."[38] The Eleventh Circuit has called the "mere conduit" or "control test" a "very flexible, pragmatic one; ... courts must look beyond the particular transfers in question to the entire circumstance of the transactions."[39] In analyzing the nature of the transfers to Novadebt, the court must "step back and evaluate a transaction in its entirety to make sure that conclusions are logical and equitable. This approach is consistent with the equitable concepts underlying bankruptcy law."[40]

### D.     *Harwell* Factor I, No Control over Assets Received

A party is an initial transferee only if it "exercises legal control over the assets received, such that they have the right to use the assets for their own purposes, and not if they merely served as a conduit for assets that were under the actual control of the debtor-

---

[36] *In re Int'l Admin. Services, Inc.*, 408 F.3d 689, 705 (11th Cir. 2005).
[37] *Harwell v. Hutton (In re Harwell),* No. 09-14997, 2010 WL 5374349, at *11 (11th Cir. Dec. 29, 2010) (In *Harwell*, the Court rejected that this language in *IBT* was merely dicta).
[38] *In re Harwell*, 628 F.3d 1312, 1322-23 (11th Cir. 2010).
[39] *In re Pony Express Delivery Services, Inc*., 440 F.3d at 1300, 1302 (11th Cir. 2006) (quoting *Societe Generale*, 848 F.2d at 1199) (internal quotation and citation omitted).
[40]   *Id.*

transferor or the real initial transferee."[41] Novadebt argues that it "lacked sufficient control over the subject transfers to qualify as an initial transferee."[42] The record supports this assertion. Novadebt is a non-profit consumer credit counseling agency, which creates debt management plans (DMPs) for parties in debt. In order to start accepting funds, Novadebt first has a party creating the DMP sign an Agreement for Credit Counseling and Debt Adjustment Services (Agreement), and an Affidavit and Release. These two documents are important because they greatly restrict Novadebt's control over the funds. The Agreement sets up an individual client trust account for each DMP, where all of the money and funds received for a client's creditors must go.[43] The Trustee does not contend that any of the funds from Debtor earmarked for DMP Creditors were ever commingled with any of the other funds held by Novadebt. All of the funds in a client trust account (not including the monthly maintenance fee) are earmarked for transfer.[44] The Agreement also states that Novadebt will disperse to the DMP Creditors all funds received and placed in the client trust account within ten days. This further limits the control that Novadebt has over the funds. Novadebt is not able to hold onto the funds for an indefinite period of time, or use them in any way it wants. The Agreement also includes an estimate of the monthly payment amounts due, based upon the information provided by the client.[45] This demonstrates that Novadebt did not provide a definitive payment quote until it verified with the DMP Creditors to see exactly how much was required. Novadebt was never in a position to dictate how much money it wanted to

---

[41] *In re Pony Exp. Delivery Services, Inc.*, 440 F.3d 1296, 1300 (11th Cir. 2006).
[42] *See* Def.'s Mot. for Summ. J., ECF No. 20, at pg. 7.
[43] *See* ECF No. 20, at pg. 15.
[44] *See* Niemiec affidavit, ECF No. 20, at ¶ 13.
[45] *See* Def.'s Mot. for Summ. J., ECF No. 20, at pg. 15 ("Client understands that the estimated payment plan…is based upon the balance information supplied by client at the time of the initial consultation. Client understands that this amount is an estimate, subject to change").

collect or decide what portion to give out to the DMP Creditors. The amount to be paid was dependent on the other parties involved in the transaction.

The Affidavit and Release is also an important document to examine in order to understand the scope of Novadebt's control over the transfers. The language of this signed document shows that the amounts due, conditions and terms of the debt repayment are all dictated by the DMP Creditors, and not Novadebt.[46] Additionally, the responsibility of repayment and any negative ramifications of non-repayment are all on the Ferbers, not Novadebt.[47] The language of the Affidavit and Release demonstrates to the court that Novadebt tried to further limit its assumption of responsibility over the transactions between the Ferbers and the DMP Creditors. This is in line with Novadebt's defense that it was a "mere conduit" for the transfers and not trying to assume additional control or responsibility.

In its motion to dismiss, Novadebt analogizes its control over the transferred funds to that of other fiduciaries, such as a bank redirecting funds to a third party, or an insurance broker receiving funds to pay insurance premiums for clients.[48] Novadebt argues that the facts of this case are substantially similar to those of *Andreini v. Pony Express Delivery Services (In re Pony Exp. Delivery Services, Inc.),* 440 F.3d 1296, 1304 (11th Cir. 2006). In *Pony Express,* a debtor made payments to the defendant insurance broker, for premiums owed to the debtor's insurance providers. Initially the debtor sent a check to the defendant for the amounts owed. The check was deposited into the defendant's client trust account set up for the debtor. Before the check cleared, the

---

[46] *See* Def.'s Mot. for Summ. J., ECF No. 20, at pg. 16.
[47] *Id.*
[48] *See* Def.'s Mot. for Summ. J., ECF No. 20, at pg. 7 (Comparing Novadebt to the insurance broker in *Pony Express,* 440 F.3d 1296 (11th Cir. 2006) and with a bank in *Metsch v. First Alabama Bank of Mobile (In re Colombian Coffee Co., Inc.)* 59 B.R. 643 (S.D.Fla. 1986), among other cases and examples).

defendant sent the amounts owed to the insurance providers, from the trust account. The check was returned twice for insufficient funds, putting the defendant on notice of debtor's financial condition. The debtor then sent defendant a wire transfer to cover the deficiency in the client trust account. Two days later the debtor filed for voluntary Chapter 11 bankruptcy protection. The Eleventh Circuit Court of Appeals found that the Defendant was a "mere conduit" not liable as an initial transferee, because of insufficient control over the transferred funds. The similarities between the cases are evident. Both the defendant in *Pony Express* and Novadebt received funds from a debtor pre-bankruptcy, the funds were placed into a trust account, and then paid out to creditors. In the present case, just as in *Pony Express,* Novadebt had a duty to use the funds in the trust account only for the agreed upon purpose.

The Trustee argues in its Cross Motion for Summary Judgment that the court should not rely on *Pony Express* because there are several key distinctions between that case and the case at hand. The Trustee turns to language in *Pony Express* to support its contention that Novadebt is unable to maintain its equitable defense because it did not have a direct relationship with the Debtor. "This test takes on special significance where the recipients of avoidable transfers are agents or fiduciaries of the debtor-transferor, such as banks or, in this case, insurance brokers, who are duty-bound to take only limited actions with respect to the funds received."[49] The Court continues by saying that "often these fiduciaries or agents are not considered initial transferees because their legal control over the assets received is circumscribed by their legal duties to their clients".[50] The Trustee argues that "in this case it was not the Debtor who had the relationship with the

---

[49] *In re Pony Exp. Delivery Services, Inc.*, 440 F.3d 1296, 1301 (11th Cir. 2006).
[50] *Id.*

initial transferee, Novadebt. There was no legal relationship between Debtor and Novadebt."[51] There is a key point in the language from *Pony Express* that the Trustee does not address. The Eleventh Circuit Court of Appeals states that "the test takes on special significance" when there is an agency or fiduciary relationship between the debtor and the transferor. It does not say that an agency or fiduciary relationship is a *requirement* for this equitable defense to apply.

There are examples from other cases where a party or defendant had no relationship with the debtor-transferor, yet a court still allowed the "mere conduit" equitable defense to apply. In the case of *Metsch v. First Alabama Bank of Mobile (In re Colombian Coffee Co., Inc.),* 59 B.R. 643 (S.D. Fla. 1986), a debtor transferred funds over a four week period from its bank accounts, to a defendant's bank account, from which the funds were transferred again into the account of another company.[52] The defendant bank had no fiduciary or contractual relationship with either the debtor or the company that eventually received the funds. Even without a formal relationship, the Court still held that the defendant bank was just a "mere conduit" for the funds. In the case of *In re S & W Int'l Food Specialties, Inc.*, 362 B.R. 36 (Bankr. N.D. Ga. 2006), a trustee brought an action against a real property seller for being an initial transferee. The debtor was a company, and the chief financial officer ("CFO") of the company used funds from the debtor to purchase a home for himself. At the closing for the home, the CFO gave a check from the debtor to a closing attorney representing a mortgage lender. The mortgage lender provided a mortgage to the CFO for the property. The check covered the closing costs as well as any amounts exceeding the mortgage on the property.

---

[51] *See* Pl.'s Cross Mot. for Summ. J., ECF No. 33, at pg. 13.
[52] *In re Colombian Coffee Co., Inc.,* 59 B.R. 643, 644 (Bankr. S.D. Fla. 1986).

The closing attorney for the mortgage lender had the CFO take the check to the debtor's bank to get a certified check payable directly to the closing attorney. The defendant home seller tried to argue that it was not liable as an initial transferee, because the closing attorney received the funds first.[53] The Court found that there was no privity between the CFO or debtor, and the closing attorney.[54] Despite the complete lack of privity between the closing attorney and the home purchasing parties, the Court held that the closing attorney acted as a "mere conduit" and was not liable to the trustee as an initial transferee. "The closing attorney in this case acted as nothing more than a financial conduit to facilitate the transaction. The closing attorney was neither an initial transferee nor an agent."[55]

In the present case, even if Novadebt was not in privity with the Debtor, it can still qualify for the "mere conduit" equitable defense. But as discussed above and as the record shows, Novadebt did have certain fiduciary and contractual duties by which it was bound. The client trust account and the DMP were set up when the Ferbers entered into the contract with Novadebt. This created certain binding responsibilities for Novadebt, one of which was a limitation on use of the earmarked funds in the client trust account. It is irrelevant for purposes of this analysis whether the Debtor or the Ferbers entered into the contract with Novadebt. Aside from the monthly maintenance charge, all of the transfers put into the client trust account, regardless of the source, were outside of Novadebt's dominion and control.

---

[53] *See In re S & W Int'l Food Specialties, Inc.*, 362 B.R. 36, 38 (Bankr. N.D. Ga. 2006).
[54] *Id.* at 42 ("it appears that no escrow agreement exists in this case, creating privity between [the CFO] and the closing attorney").
[55] *Id.*

### E.    *Harwell* Factor II, Acted in Good Faith

The second *Harwell* factor that Novadebt must prove is that it acted in good faith and as an innocent participant in the fraudulent transfers. After examining the record and following the judicial directive provided in the Eleventh Circuit "mere conduit" or "control test" to equitably evaluate the totality of the transactions, the court finds that Novadebt acted innocently and in good faith. Novadebt is a non-profit consumer credit and housing counseling agency. It provides counseling and consolidation services to its clients.[56] Novadebt asserts that it "receives thousands of payments each month for DMPs. It is not uncommon for DMPs to be funded by third parties (parents, relatives, etc.)…payments…are not reviewed by Novadebt to determine whether the name of the payor matches the name on the DMP".[57] Furthermore, Novadebt "does not investigate the solvency of payors transferring funds into a DMP, as such a review would be unduly burdensome and expensive."[58] Novadebt also stated that it did not conduct these types of reviews for the DMP at issue in this case. The Trustee argues that Novadebt acted in bad faith and should be held liable because it failed to review the incoming funds paid by Debtor. "Novadebt takes the position that its failure to monitor the name of the payor matches the name of the consumer for whom the DMP was created is a defense."[59] Novadebt's claims that it acted in good faith because it never knew about the Debtors insolvency when it received the funds.

It is an understandable business practice for Novadebt not to review the source of funds as they come into the DMPs. Novadebt has structured the DMPs, and its business is

---

[56] *See* Def.'s Mot. for Summ. J., ECF No. 20, pg. 10 (Niemiec Affidavit, at ¶ 2).
[57] *See* Def.'s Mot. for Summ. J., ECF No. 20, pg. 13 (Niemiec Affidavit, at ¶ 18).
[58] *Id.* (Niemiec Affidavit, at ¶ 19).
[59] *See* Pl.'s Cross Mot. for Summ. J., ECF No. 33, at ¶ 15.

to act as a "mere conduit." It does not take control of the payments as they come into the DMPs, and it forwards the payments only in accordance with the terms of each DMP. It would be difficult and prohibitively expensive for a non-profit to add the extra time and administrative cost to review each check and investigate the source. Even if Novadebt could easily conduct a review of checks as they come in for processing,[60] and there is no evidence in the record that it could do so, the court finds that Novadebt would still be acting in good faith if it failed to undertake this unnecessary act of procedural oversight and control. Banks, insurance brokers, and other intermediaries found to be "mere conduits" are not required to review incoming transfers as diligently as the Trustee would wish Novadebt to have done. If Novadebt had reviewed all of the checks that came into the Ferbers' DMP, it would only have been put on notice to the fact that the Ferbers were making payments into their DMP with checks drawn from a company they controlled. Nothing about that fact would raise suspicion of insolvency, much less allegations of bad faith. As Novadebt states in the Niemiec Affidavit, "even if Novadebt had reviewed incoming payments into the DMP, and it was discovered that the payor was not the Ferbers' individually, such discovery would not have put Novadebt on notice of any scheme to defraud creditors of the payor".[61]

The Trustee also contends that receiving a check would put Novadebt on a greater level of notice as to who is depositing the money than receiving a money order would.[62] However, knowing the identity of the transferor, and even being aware of the transferor's financial difficulties, is insufficient to establish bad faith. In *Pony Express,* the insurance

---

[60] *Id.* (Trustee argues that a complete review of the checks would be feasible, considering that the checks are first manually sorted to be entered into a DMP).
[61] *See* Def.'s Mot. for Summ. J., ECF No. 20, at ¶ 21.
[62] *See* Pl.'s Cross Mot. for Summ. J., ECF No. 33, at pg. 13.

broker received a check from the debtor that twice would not clear, which put the insurance broker on notice of the debtor's financial difficulties. However, the *Pony Express* Court held that the insurance broker did not act in bad faith when it accepted a subsequent wire transfer to cover the deficiency in the client trust account.[63] As far as the record shows, Novadebt never had issues depositing checks from the Debtor into the DMP. This put Novadebt on less notice of immediate insolvency then the insurance broker in *Pony Express.*

Taking the transfers from Debtor to Novadebt as a whole,[64] it would be inequitable to require Novadebt to pay the full amount sought by the Trustee. Novadebt acted in good faith and without control over the funds paid on to the DMP Creditors. However, not all of the funds in the Ferbers' DMP were paid on to the DMP Creditors. As the record shows Novadebt was allowed to keep $50.00 from each monthly payment as a monthly maintenance fee.[65] This amount totaled $736.00 before Novadebt waived the maintenance fee for the Ferbers.[66] The Trustee has alleged in its complaint that the $70,217.76 it is seeking in fraudulent transfers, which includes the monthly maintained fees, originated from check payments made by the Debtor into the DMP. Novadebt has not tried to argue that the monthly maintenance fees payments came from a different source then the Debtor. These fees were fraudulent transfer payments made by the Debtor that were taken out of the client trust account and kept by Novadebt. The court accordingly finds that Novadebt had control over the funds taken out of the DMP as

---

[63] *In re Pony Exp. Delivery Services, Inc.*, 440 F.3d 1296, 1304 (11th Cir. 2006).
[64] This is required of the Court when evaluating a mere conduit defenses. (*See In re Chase & Sanborn Corp.*, 848 F.2d 1196, 1199 (11th Cir. 1988).
[65] *See* Def.'s Mot. for Summ. J., ECF No. 20., at ¶ 15; Pl.'s Cross Mot. for Summ. J., ECF No. 33, at ¶ 9.
[66] *See* Def.'s Mot. for Summ. J., ECF No. 20, Footnote 2. ("Subsequently, the $50.00 maintenance fee was waived when the Ferbers claimed financial hardship and inability to pay the fee. The Ferbers paid the $50.00 monthly service fee fourteen times and a fee of $36.00 one time).

monthly maintenance fees. Taking the *Harwell* factors into consideration, this precludes Novadebt from asserting the "mere conduit" defense with regards to all of the maintenance fees it kept from the Ferbers DMP trust account. Under §554(b)(1) and §550(a), the Trustee is entitled to avoid and receive the $736.00 in transfers paid by Debtor to Novadebt. Additionally, the Trustee is not without further remedies to recover funds for the benefit of the estate. Trustee can still file suit under §550(a) against any party in the Debtor transfer sequence that qualifies as an initial transferee, mediate transferee, or immediate transferee of the initial transferee, or against any entity for whose benefit such transfer was made.[67]

*Conclusion*

Based on a review of the record and the applicable law, this court finds that Novadebt has sufficiently proven the necessary *Harwell* factors to establish the "mere conduit" equitable defense against all of the Trustee's claims with respect to the funds which it paid on to the Ferbers' DMP Creditors under the agreement. It is accordingly **ORDERED** that Trustee's Cross-Motion for Summary Judgment **[ECF No. 33]** is **DENIED** except with respect to the $736.00 retained by Novadebt, as to which the Trustee's Cross-Motion is **GRANTED**. Novadebt's Motion for Summary Judgment **[ECF No. 20]** is **GRANTED** except with respect to the $736.00 as to which it was the initial transferee, and is **DENIED** to that extent.

Novadebt's counsel is **DIRECTED** to submit a final judgment pursuant to Bankruptcy Rule 7054 consistent with the terms of this order within 14 days.

---

[67] *See* 11 U.S.C. §550(a).

**SO ORDERED**.

# # #

*The Clerk of Court is directed to provide copies of this order to all registered interested parties.*